Michael A. Amon, SBN 226221
amon@fr.com
Oliver Richards, SBN 310972
ojr@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  858-678-5070/Fax: 858-678-5099

*Attorneys for Defendant*
UNISYN VOTING SOLUTIONS, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>UNISYN VOTING SOLUTIONS, INC., a California corporation,<br><br>Defendant. | Case No. 18-CV-0910 CAB (WVG)<br><br>**UNISYN'S ANSWER AND COUNTERCLAIMS**<br><br>Judge: Hon. Cathy Ann Bencivengo<br>Courtroom: 4C<br>Complaint Filed: May 10, 2018 |
| UNISYN VOTING SOLUTIONS, INC., a California corporation,<br><br>Counterclaimant,<br><br>v.<br><br>ELECTION SYSTEMS & SOFTWARE, LLC, a Delaware limited liability company,<br><br>Counter-Defendant. | |

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendant Unisyn Voting Solutions, Inc. (Defendant or "Unisyn") files its Answer and Counterclaims to Plaintiff Election Systems & Software, LLC's (Plaintiff or "ES&S") Complaint (D.I. 1) ("Complaint").

## ANSWER

Unisyn responds to the allegations contained in the numbered paragraphs of ES&S's Complaint below. Unisyn denies each and every allegation contained in the Compliant that is not expressly admitted below. Any factual allegation admitted below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that may arguably follow from the admitted facts. Unisyn denies that Plaintiff is entitled to the relief requested or any other.

## PARTIES

1.  Unisyn is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations and therefore denies them.

2.  Unisyn admits that it is a California corporation with its principal place of business located at 2310 Cousteau Court, Vista, California 92081.

## JURISDICTION AND VENUE

3.  Unisyn admits that Plaintiffs' Complaint purports to allege patent infringement under 35 U.S.C. § 271 *et seq.* Unisyn further admits, inasmuch as the Complaint purports to state claims for patent infringement, this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

4.  Unisyn admits that it is a California corporation and is registered with the State of California to transact business in California. Unisyn does not contest that this Court has personal jurisdiction over Unisyn.

5.  Unisyn admits that it is incorporated in California, has its principal place of business in this district, and has a regular and established place of business in this

district.  Unisyn does not contest that venue is proper in this judicial district under 28 U.S.C. § 1400(b).  Unisyn denies all other allegations in this paragraph.

## PATENT-IN-SUIT

6.      Unisyn admits that U.S. Patent No. 7,753,273 ("the '273 patent") is entitled "Ballot marking system and apparatus utilizing multiple key switch voter interface" and that the '273 patent was issued by the USPTO on July 13, 2010.  Unisyn admits that Eugene M. Cummings is listed on the face of the '273 patent is an inventor. Unisyn further admits that a copy of the '273 patent was attached as "Exhibit A" to Plaintiffs' Complaint.  Unisyn denies that the '273 patent was duly and legally issued, and denies all other allegations in this paragraph.

7.      Unisyn is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 7, and therefore denies them.

8.      Unisyn admits that U.S. Patent Application No. 10/454,345 was filed on June 4, 2003 and issued as the '273 patent.  Unisyn admits that the '273 patent lists Provisional application No. 60/398,919, filed July 26, 2002, as a "Related U.S. Application."  Unisyn is without information or knowledge sufficient to form a belief as to whether the '273 is entitled to the priority date of that provisional application, and therefore denies that allegation.

## FACTS RELATING TO THE '273 PATENT

9.      Unisyn admits that the '273 patent contains four independent claims and fifteen dependent claims and that independent claims 1 and 13 are reproduced in Paragraph 9 of the Complaint.

10.     To the extent Paragraph 10 of the Complaint implicates legal conclusions, no response is required.  Unisyn admits that the claims of the '273 patent recite a "method of voting that allows a voter to navigate a plurality of contests and a plurality of options associated with each of said contests" (e.g. Claim 1) and a "voting system" comprising "a navigation device" (e.g. Claim 13).  Unisyn otherwise denies the allegations of Paragraph 10.

11.     Unisyn admits that elections in the United States have been conducted utilizing a paper ballot in which a voter hand-marked his or her votes and that such hand-marking has been accomplished either with pen and paper or by punching holes in a designated space on the ballot.  Unisyn otherwise denies the allegations of Paragraph 11.

12.     Unisyn admits that a voter using utilizing paper ballots as described in Paragraph 11 took his or her marked ballot and inserted it into a ballot box to subsequently be counted in the election.  Unisyn otherwise denies the allegations of Paragraph 12.

13.     Unisyn admits that, prior to the '273 patent, ballot scanners were used to tally hand-marked ballots.  Unisyn otherwise denies the allegations of Paragraph 13.

14.     Unisyn admits that voting systems involving paper ballots and ballot scanners could prove difficult for voters with physical impairments, including visual impairments, and that such voters may have required assistance to vote using such systems.  Unisyn denies the implication that poll workers who volunteer their time to assist voters in participating in their democratic voting right would violate the sanctity of a person's right to a private vote, but recognizes that those with physical impairments may wish for greater independence.  Unisyn otherwise denies the allegations of Paragraph 14.

15.     Unisyn admits that, prior to the '273 patent, certain elections used electronic voting terminals where voters could electronically enter a vote directly through an electronic terminal and the vote was tallied on the voting terminal.  Unisyn otherwise denies the allegations of Paragraph 15.

16.     Unisyn admits that some electronic voting terminals may be less efficient than hand-marking paper ballots, but denies that all such systems prior to the '273 patent had such deficiencies.  Unisyn admits that voters have to navigate a plurality of races that may have a plurality of candidates, regardless of whether they are voting using hand-ballots or electronic voting machines.  Unisyn admits that polling places

may have a large number of electronic voting terminals.  Unisyn otherwise denies the allegations and implications of Paragraph 16.

17.    To the extent Paragraph 17 of the Complaint implicates legal conclusions, no response is required.  Unisyn denies the allegations of Paragraph 17.

18.    To the extent Paragraph 18 of the Complaint implicates legal conclusions, no response is required.  Unisyn admits that the voting system described in the specification of the '273 Patent may include a ballot marking device, a display screen that is viewable by the voter and/or a set of headphones in communication with the ballot marking device that present a plurality of contests and options associated with each contest, a navigation device in communication with the ballot marking device having a center push-button switch, a first pair of push-button switches above and below the center button, and a second pair of push-button switches to the right and left of the center button, wherein one of the push-button pairs enables scrolling among contests, and wherein the other of said first and second pairs of push-button switches enables scrolling among options, and wherein the center push-button enables the entry of at least one voting selection for each contest by selecting one option without providing input on other options.  Unisyn denies that the invention described in the '273 specification is a patentable improvement over the prior art.

19.    To the extent Paragraph 19 of the Complaint implicates legal conclusions, no response is required.  Unisyn denies the allegations of Paragraph 19.

20.    To the extent Paragraph 10 of the Complaint implicates legal conclusions, no response is required.  Unisyn denies the allegations of Paragraph 20.

21.    To the extent Paragraph 10 of the Complaint implicates legal conclusions, no response is required.  Unisyn denies the allegations of Paragraph 21.

## FACTS RELATING TO UNISYN'S INFRINGEMENT

22.    Unisyn admits that it makes, uses, offers to sell, and/or sells voting systems and voting equipment such as voting machines and tabulators.  Unisyn otherwise denies the allegations and implications of Paragraph 22.

23.     To the extent Paragraph 10 of the Complaint implicates legal conclusions, no response is required.  Unisyn admits that ES&S sells voting systems and voting equipment.  Unisyn otherwise denies the allegations and implications of Paragraph 23.

24.     Unisyn admits that it sells its OpenElect Voting Interface Vote Center ("OVI-VC") portrayed in Exhibit B and that Exhibit B is a true and accurate brochure depicting OVI-VC available on Unisyn's website.

25.     Unisyn denies that the OVI-VC comprises a "ballot marking device" as that term is used in '273 patent.

26.     Unisyn admits that the OVI-VC includes a display screen and may be optionally sold with headphones.  Unisyn admits that the OVI-VC presents voters with a plurality of contests and a plurality of options associated with each contest, just as paper-ballots and other electronic voting machines have done for decades or longer. Unisyn again denies that the OVI-VC comprises a "ballot marking device" as that term is used in the '273 patent.  Unisyn otherwise denies the allegations and implications of Paragraph 26.

27.     Unisyn admits that the OVI-VC was sold with an input device that includes, among other things, four navigation buttons positioned above and below and to the left and right of a center button.  Unisyn otherwise denies the allegations and implications of Paragraph 27.

28.     Unisyn admits that the OVI-VC was sold with an input device that includes, among other things, four navigation buttons and the buttons may be configured such that the buttons to the left and right the center button allow navigation between contests and that the buttons to above and below the center button allow navigation among the options in each contest.  Unisyn otherwise denies the allegations and implications of Paragraph 28.

29.     Unisyn denies that the center button of the input device enables a user to make a selection for each contest by selecting at least one option without providing input on other options as that phrase is used in the '273 patent.

30.     Unisyn admits that it provides instructions and/or guidance to its customers and to end-users as to the operation of the OCI-VC.

31.     Unisyn admits that it makes, uses, imports, offers to sell, and/or sells its OpenElect FreedomVote Tablet ("OpenElect FVT") and that Exhibit C is a true and accurate brochure depicting the OpenElect FVT from Unisyn's website.

32.     Unisyn denies that the OpenElect FVT comprises a ballot marking device as that term is used in the '273 patent.

33.     Unisyn admits that the OpenElect FVT includes a display screen and may be optionally sold with headphones.  Unisyn admits that the OpenElect FVT presents voters with a plurality of contests and a plurality of options associated with each contest, just as paper-ballots and other electronic voting machines have done for decades or longer.  Unisyn denies that the OpenElect FVT comprises a "ballot marking device" as that term is used in the '273 patent.  Unisyn otherwise denies the allegations and implications of Paragraph 33.

34.     Unisyn admits that certain OpenElect FVT may optionally include an input device that includes, among other things, four navigation buttons positioned above and below and to the left and right of a center button.  Unisyn otherwise denies the allegations and implications of Paragraph 34.

35.     Unisyn admits that certain OpenElect FVT may optionally include an input device that includes, among other things, four navigation buttons and the buttons may be configured such that the buttons to the left and right the center button allow navigation between contests and that the buttons to above and below the center button allow navigation among the options in each contest.  Unisyn otherwise denies the allegations and implications of Paragraph 35.

36.     Unisyn denies that the center button of the input device enables a user to make a selection for each contest by selecting at least one option without providing input on other options as that term is used in the '273 patent.

37.     Unisyn admits that it provides instructions and/or guidance to its customers and to end-users as to the operation of the OpenElect FVT.

38.     Unisyn admits that ES&S sent a letter dated February 7, 2018 alleging that Unisyn's products infringe at least one claim of the '273 patent.

39.     Unisyn admits that counsel for Unisyn sent a responsive letter on March 8, 2018, acknowledging receipt of ES&S's February 7 letter but denying any of the allegations contained therein.  Unisyn further admits its letter alleged the '273 patents is invalid.

40.     Unisyn admits that counsel for ES&S sent another letter again alleging infringement of claims of the '273 patent on March 23, 2018.  Unisyn further admits that the letter purported to provide an explanation as to how Unisyn's products infringe claim of the '273 patent and as to why the '273 patent is not invalid, but denies that any of the arguments contained in that letter are meritorious.

41.     Unisyn admits that counsel for ES&S sent yet another letter on April 18, 2018, this time threatening legal action if it did not receive a further response from Unisyn.

### COUNT I

### (Infringement of U.S. Patent No. 7,753,273 by Unisyn)

42.     No response is necessary, but to the extent it is, Unisyn incorporates its answers to Paragraphs 1–41 set forth above.

43.     Unisyn is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations and therefore denies the same.

44.     Unisyn denies the allegations of Paragraph 44.

45.     Unisyn denies the allegations of Paragraph 45.

46.     Unisyn denies the allegations of Paragraph 46.

47.     Unisyn denies the allegations of Paragraph 47.

48.     Unisyn denies the allegations of Paragraph 48.

49.     Unisyn denies the allegations of Paragraph 49.

50.     Unisyn admits that it became aware of the '273 patent as a result of ES&S's February 7, 2018, letter alleging infringement of the '273 patent.  Unisyn further admits that ES&S's letter attached a copy of the '273 patent.  Unisyn otherwise denies the allegations and implications of Paragraph 50.

51.     Unisyn denies the allegations of Paragraph 51.

52.     Unisyn denies the allegations of Paragraph 52.

53.     Unisyn denies the allegations of Paragraph 53.

54.     Unisyn denies the allegations of Paragraph 54.

55.     Unisyn denies the allegations of Paragraph 55.

56.     Unisyn denies the allegations of Paragraph 56.

## JURY DEMAND

Answering ES&S's demand for jury trial, Unisyn acknowledges that Plaintiff demands a trial by jury on all claims and issues so triable.  Likewise, Unisyn demands a trial by jury.

## PRAYER FOR RELIEF

Unisyn denies that Plaintiff is entitled to any relief whatsoever, whether as sought in the Prayer for Relief of its Complaint, as relief request in paragraphs 1-56 of the Complaint, or otherwise, in connection with this civil action.

# AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Unisyn asserts the following affirmative defenses in response to Plaintiff's Complaint. By alleging the Affirmative Defenses set forth below, Unisyn does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

57.     ES&S's Complaint, on one or more claims for relief set forth therein, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Non-infringement)

58.     Unisyn has not infringed, and does not infringe, either literally or under the doctrine of equivalents, any valid, enforceable, asserted claim of the '273 Patent, whether directly, indirectly, individually, jointly, contributorily, and/or by inducement.

## THIRD AFFIRMATIVE DEFENSE

### (Invalidity)

59.     The claims of the '273 patent are invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112.

## FOURTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

60.     The relief sought by ES&S is barred under the doctrine of prosecution history estoppel.

## FIFTH AFFIRMATIVE DEFENSE

### (No Equitable Relief)

61.     ES&S is not entitled to equitable relief, including but not limited to its request for injunctive relief, as it has an adequate remedy at law.

1

### RESERVATION OF ALL AFFIRMATIVE DEFENSES

2      62.    Unisyn hereby gives notice that it intends to rely upon any other matter

3  constituting an avoidance or affirmative defense as set forth in Rule 8(c) of the Federal

4  Rules of Civil Procedure.  Unisyn reserves the right to seek leave to amend this Answer

5  to add to, amend, withdraw, or modify these defenses as its investigation continues and

6  as discovery may require.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNTERCLAIMS

Counterclaimant Unisyn Voting Solutions, Inc. ("Unisyn"), through its undersigned counsel, counterclaims and alleges against Election Systems & Software, LLC's ("ES&S") as follows:

### NATURE OF THE ACTION

1.     This is an action for a declaratory judgment of invalidity and non-infringement of the '273 patent ES&S purports to own.

### PARTIES

2.     Unisyn is a California Corporation with its principle place of business located at 2310 Cousteau Court, Vista, California 92081.

3.     As alleged in its Complaint, ES&S is a Delaware limited liability company with its principle place of business located at 11208 John Galt Boulevard, Omaha, Nebraska 68137.

### JURISDICTION AND VENUE

4.     Unisyn's counterclaims for declaratory relief arise under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* and the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

5.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1338(a) (patents), 2201(a) and 2202 (declaratory judgment), and 1367(a) (supplemental jurisdiction).

6.     This Court has personal jurisdiction over ES&S because ES&S has initiated litigation in this judicial district in connection with this dispute.

7.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

8.     An immediate, real, and justiciable controversy exists between the Unisyn and ES&S as to whether the claims of the '273 patent are invalid and have not been infringed, as ES&S has sent letters threatening legal action for Unisyn's alleged

infringement of claims of the '273 patent and because ES&S has initiated the present action alleging infringement of the claims of the '273 patent.

## FACTUAL BACKGROUND

9.     Unisyn is a home-grown San Diego-based startup that prides itself on its continued commitment to cutting edge research and the development of innovative electronic voting systems.  Unisyn entered a marked filled with entrenched players like ES&S who had a stranglehold on the market thanks at least in part to the use of proprietary, closed-source systems.  Unisyn quickly led the industry in leaving behind these proprietary systems in favor of transparency, developing a hardened Linux and Java based platform based on open-source technology for its voting products.  Unisyn further ensures transparency and security in the voting process by making its source code available for review as part of an official procurement or evaluation by a voting jurisdiction.

10.     Unisyn's innovations have been recognized, with Unisyn being the first company to achieve 2005 Certification for a digital scanning system based on the Voluntary Voting Systems Guidelines put in place by the United States Election Assistance Commission ("EAC").  This standard put in place significantly higher requirements and significantly increased access for voters with disabilities.  In order to receive certification, Unisyn went through an extensive testing and review process that included the completion of an application, employment of an EAC-accredited laboratory for system testing, and technical analysis of the laboratory test report by the EAC.  Unisyn has since achieved this certification an additional eight times.

11.     Unisyn's products feature industry-leading security, including: security controls that limit or detect access to critical systems and data; system functions that validate executables and election data before allowing voting to proceed; continual validation of redundant storage locations to ensure integrity of cast votes; comprehensive recovery and validation to ensure data integrity in the case of system failure; strong encryption and digital signatures to prevent and detect unauthorized

1    access; and physical measures, coupled with comprehensive procedures, to ensure

2    proper and effective security and integrity during equipment preparation, testing, repair

3    and use.  In short, Unisyn provides unmatched security and auditability.

4          12.     Unisyn's products also feature industry-leading accessibility for those with

5    disabilities.  For example, Unisyn's products offer the option of adding equipment

6    compliant with the American's with Disability Act (ADA) and the Help America Vote

7    Act (HAVA) such as sip-n-puff assistive technology that allows voters who are unable

8    to use their hands the ability to vote independently.  Unisyn's products also feature

9    zoom-in ballots for voters that may have difficulty reading small text; multi-lingual

10   audio functionality; and a screen-reader mode.  All of Unisyn's products also feature an

11   intuitive, easy-to-use interface suitable for voters of all ages and experience with

12   computer systems.  Unisyn's products may optionally include the navigation device

13   which ES&S alleges infringes its patent.

14         13.     Unisyn's innovative and industry-leading products include both polling

15   stations such as the OpenElect Voting Interface-Vote Center and the OpenElect

16   FreedomVote Tablet (the "Unisyn Voting Systems"); as well as central system for

17   counting and tabulating votes, such as the OpenElect Voting Central Scan systems.

18         14.     ES&S has historically been the leading seller of voting machines in the

19   country.  ES&S's near monopoly and its use of intellectual property to maintain that

20   monopoly have previously roused the interest of government regulators.  In 2010, the

21   Justice Department sued ES&S, requiring it to divest certain voting machine assets and

22   requiring it to grant a "fully paid-up, irrevocable, perpetual license" to intellectual

23   property associated with those assets.[1]  ES&S has also been noted for "coax[ing] state

24   and local elections officials to serve on an 'advisory board' that gathers twice annually

25   for company-sponsored conferences," such as a fully-paid trip to Las Vegas (including

26

27

28   ───────────────
[1] See Exhibit 1 (Zetter, Kim, "Feds Move to Break Voting Machine Monopoly," Wired Magazine, https://www.wired.com/2010/03/ess-sued-in-antitrust-cas/ (last visited June 27, 2018)).

13

UNISYN'S ANSWER AND COUNTERCLAIMS
CASE NO. 18-CV-0910 CAB (WVG)

show tickets) that "[e]thics experts and election watchdogs" have said is "potentially corrupting" on those official's choice as to which voting machines to use.[2]

15.     ES&S purports to own U.S. Patent No. 7,753,273 ("the '273 patent"), titled "Ballot Marking System and Apparatus Utilizing Multiple Key Switch Voter Interface." The '273 patent originated from U.S. Patent Application No. 10/454,345, filed on June 4, 2003, and issued on July 13, 2010—meaning the '273 patent underwent over six years of prosecution before it issued.

16.     As described by the specification of the '273 patent, its claimed "invention is generally directed to a ballot marking apparatus adapted to mark a user-readable ballot containing a plurality of races in accordance with the selections made by a voter, each of the races having a plurality of candidates, the apparatus comprising: a display screen viewable by the voter; an election being presented to the voter one race at a time in a series of screens on the display; a central push-button switch for making a selection; a first pair of push-button switches generally disposed above and below the central push-button for scrolling a cursor up and down in the display to select one of the plurality of candidates; a second pair of push-button switches generally disposed horizontally on either side of the central push-button switch for scrolling between races in the election; and the central selection switch when activated signaling selection of a particular candidate by the voter." '273 patent, 2:24–38.

17.     Claim 13 is generally representative of the subject matter claimed by the '273 patent, and recites:

> A voting system comprising:
>
> > a ballot marking device;
> >
> > > one or both of a display screen and a set of headphones in
> > >
> > > > communication with said ballot marking device and

---

[2] *See* Exhibit 2 (Gordon, Greg et al., "Voting machine vendor treated election officials to trips to Vegas, elsewhere," McClatchy DC Bureau, https://www.mcclatchydc.com/news/politics-government/election/article213558729.html#cardLink=row1_card2%23storylink=cpy (last visited June 27, 2018)).

1      configured to present a plurality of contests and a plurality of

2      options associated with each of said contests; and

3      a navigation device in communication with said ballot marking

4      device and having a center push-button switch, a first pair of

5      push-button switches positioned above and below said

6      center push-button switch, and a second pair of push-button

7      switches positioned left and right of said center push-button

8      switch, wherein said navigation device is configured such

9      that one of said first and second pairs of push-button

10     switches enables scrolling among said contests, wherein the

11     other of said first and second pairs of push-button switches

12     enables scrolling among said options; and wherein said

13     center push-button switch enables the entry of at least one

14     voting selection for each of said contests by selecting at least

15     one of said without providing any input on other of said

16     options.

17     '273 patent, 20:1–22.

18         18.    The '273 patent also contains method claims, which recite substantially

19     the same subject matter but in the context of a method of voting which involves

20     presenting a voter with a "navigation device" like that claimed in the last element of

21     claim 13.

22         19.    As even a cursory glance at the '273 patent reveals, the voting system

23     described and claimed by the '273 is different than the Unisyn Voting Systems.  For

24     example, every system claim included in the '273 patent requires that the voting system

25     comprise a "ballot marking" device designed to receive pre-printed paper ballots

26     inserted by the voter and to "mark" those pre-printed ballots according to the wishes

27     of the voters.  *See, e.g.,* '273 patent, at Abstract ("A ballot marking system and apparatus

28     ***for marking a paper ballot listing a plurality of candidates***" . . . If a ballot is to be

machine marked, ***the ballot is inserted into the marking device* . . .**" (emphases added)); *id.* at 2:24–25 ("The invention is generally directed to a ballot marking apparatus ***adapted to mark a user-readable ballot* . . .**" (emphasis added)); *id.* at 4:55–58 ("the marking is done such that the same marking spaces 35 are marked as would have been marked by the voter had the voter manually marked the ballot at voting booth 32"); *id.* at 7:21–23 ("marking device 22 includes a pair of marking heads 94 and 95 (FIGS. 3 and 4) which engage the top surface of the ballot through apertures"); *id.* at 14:8–12 ("The voter has the option of manually marking the ballot 306 in the conventional way, or of inserting it into a ballot receiving slot 308 at the front of the marking device 302 of the voter assistance terminal 300 for electronic marking"); *see also id.* Fig. 6 (showing pre-printed "voter- and machine-markable, voter- and machine-readable paper ballot adapted for use in the voting system"); *id.* at Fig. 12A (showing the first view of the message display as "insert unmarked ballot to use voting terminal"); *id.* at Fig. 19 (showing "insert ballot to begin").  Indeed, a significant portion of the specification of the '273 patent is devoted to machinery for and methods of receiving, validating, and "marking" these pre-printed ballots. *E.g.* '273 patent, at 6:3–39 (describing insertion of ballot); *id.* at 6:59–7:11 (describing validating pre-printed ballots); *id.* at 7:13–67 (describing machinery and process used to "mark" pre-printed ballots); *see also, e.g., id.* at 10:9–67 (same).

20.   Unlike the voting system described and claimed by the '273 patent, the Unisyn Voting Systems do not require the use of pre-printed paper ballots, nor are such ballots "marked."  Instead, a voter indicates his or her preferences on the voting system without having to insert a ballot and receives a printed receipt or ballot after he or she has finished voting.  This represents a significant departure from, and improvement over, the "ballot marking" system of the '273 patent as the Unisyn systems do not require ballots to be printed beforehand, making the overall voting system more efficient and cost effective for jurisdictions to implement.  As the brochure attached to ES&S's complaint explains, the Unisyn system "[r]educes the cost

of pre-printed ballots by printing a paper ballot with just the push of a button." *E.g.* Exhibit C to Complaint, at Page ID 62.

21.     Moreover, every claim of the '273 patent recites that the center button of its claimed "navigation device" "enables the voter to make at least one voting selection for each of said contests by selecting at least one of said options without providing any input on other of said options." Unlike the systems and methods claimed by the '273 patent, the center push button on the Unisyn Voting Systems **does** provide input on the other options in the contest as selection of one choice indicates non-selection of the other choices. Moreover, in an effort to further separate its innovative products from the '273 patent, the Unisyn Voting Systems today have been modified such that their center push button is no longer used for selection.

22.     An examination of the specification and claims of the '273 patent also reveals that the '273 patent fails to claim anything beyond the ordinary skill of an artisan combining well-known teachings of the prior art. Indeed, the claims of the '273 patent were rejected by the USPTO **eleven times** before a new examiner was assigned who finally relented and allowed the claims to issue in their present form.

23.     The '273 patent is far from the first patent to claim an electronic voting system. Indeed, the use of computing systems to electronically receive a voters' vote dates back to at least the 1980's. For example, U.S. Patent No. 4,641,240 —issuing from an application filed in May of 1984—describes and claims an "Electronic voting machine and system" that operates much more closely to the Unisyn Voting Systems than the purported invention of the '273 patent in that this 1984 voting system where a printed by a printer rather than through marking of a previously-printed ballot. A true and correct copy of this patent is attached as "Exhibit 3."

24.     Moreover, the '273 patent is preceded by numerous other patents filed by the same inventor describing the "ballot marking" processes and apparatus claimed by the '273 patent. For example, U.S. Patent No. 7,080,779, which issued in 2006, describes and claims the very same ballot marking ballot marking as that described and

claimed by the '273 patent.  A true and correct copy of this patent is attached as "Exhibit 4."

25.     What purportedly sets the '273 patent apart from these prior art electronic voting machines is the use of the claimed "navigation device."  However, an arrangement of keys that includes arrow keys above and below and to the left and right of a center select button would have been an obvious choice to a skilled artisan designing an input for a voting terminal as "this is a user-friendly, conventional arrangement that is familiar to users because of the well-known art of keyboard and game controller navigational arrangements, and it allows the user to select an object more efficiently since all of the buttons are arranged logically in the same area."  *See* Ex. 5 (excerpts from '273 File History) at page 84.

26.     This configuration of buttons was well-known in the art in a variety of contexts.  For example, U.S. Patent No. 6,606,082 (attached as Exhibit 6) describes using such a configuration of buttons for navigation on any small-screen electronic device, as shown in the annotated excerpt below:



*See* Ex. 6, Fig. 3; *see also id.* at 4:25–34 (explaining that the above-shown "faceplate 54 also has a power button or key 72, four directional navigation keys or direction keys 74 (including vertical and horizontal arrow keys), [and] an 'enter' button or item selection key 76").

27.     U.S. Patent No. 5,410,326—issued in April of 1995—describes the same configuration of buttons in the context of a television remote, as shown in the annotated excerpt below:



*See* Ex. 7, at Fig. 2B.  As explained in the specification of this patent, "[t]he four arrows 47, 48, 49 and 50, indicate a direction of movement for the cursor when the respective arrow is touched.  Centrally located with respect to the four arrows is a display icon 51 which, when touched, sends an IR command to the television menu graphics generator 39 in FIG. 1A, requesting that the highlighted items be displayed." *See id.* at 9:29–35.

28.     Indeed, designers implemented this five button configuration in many different contexts.  For example, the PalmPilot PDAs used a "5-way navigator" to allow users to navigate between items on a list using directional keys above and below, and to the left and right, of a center button, and make selections from those items using the center select button, as shown in the below excerpt from the user manual:

## Using the 5-way navigator

The 5-way navigator lets you access information quickly with one hand and without the stylus. The 5-way does various things based on which type of screen is displayed. To use the 5-way, press Up, Down, Right, Left, or Center.



## Moving around with the 5-way

On most screens, one item—a button, a list entry, or an entire screen—is highlighted by default. Use the 5-way to move the highlight around to different items on the screen so that you can open or activate them. To locate the highlight, look for the following.

✂ **NOTE**   Individual applications may contain application-specific elements that can also be highlighted by the 5-way. You can locate the highlight on these items by looking for either the glow or the reverse text described here.

- These items acquire a glow around their border when highlighted:
  - An onscreen button (OK, Cancel, and so on)
  - A pick list; this includes the category pick list in the upper-right corner of many screens
  - An entire screen, such as a full list of contacts or memos
  - A check box
  - Arrows in the title bar of screens such as a list of memos or an email Inbox



*See* Ex. 8.

29.     In short, at best, the use of a five button configuration to navigate between items on a voting machine was nothing more than the application of a well-known button configuration in a new context.  To wit, when Unisyn was looking for a device input for its machine, its supplier showed Uniysn an example of a keypad that the supplier had previously made that had a five-button configuration. This example formed the base for the keypads now accused of infringement.

## COUNT I

### (Declaration of Non-Infringement)

30.    Unisyn re-alleges and incorporates paragraphs 1–29 of its counterclaims as though fully set forth herein.

31.    ES&S claims to be the owner and assignee of all rights, title and interest in and under the '273 patent.

32.    ES&S has accused the Unisyn of infringing the '273 patent and has created a substantial, immediate, and real controversy between the parties as to the non-infringement of each of the '273 patent.

33.    Unisyn does not infringe and have not infringed, either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, any claim of the '273 patent through its using, selling, and/or offering to sell, in the United States and/or importing into the United States, the Unisyn Voting Systems at least because these systems do not comprise "ballot marking devices" nor do these systems utilize a "navigations device" with a center button that "enables the entry of at least one voting selection for each of said contests by selecting at least one of said without providing any input on other of said options." Unisyn also does not infringe any claim of the '273 patent because each of the claims is invalid, as described below.

34.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Unisyn requests the declaration of the Court that Unisyn does not infringe and has not infringed the '273 patent.

## COUNT II

### (Declaration of Invalidity)

35.    Unisyn re-alleges and incorporates paragraphs 1–34 of its counterclaims as though fully set forth herein.

36.    Each and every claim of each of the '273 patent fails to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112, renderings the claims of the '273 patent invalid.

37.    By way of example only, the claims of the '273 patent attempt to claim unpatentable subject matter reflecting nothing more than an application of the abstract idea of generic navigation in the context of a voting system., rendering the claims of the patent ineligible under Section 101.

38.    By way of additional example, the claims of the '273 patent claim the combination of the five button configuration of U.S. Patent No. 5,410,326 to a voting machine, and thus claims subject matter that was known in the prior art and/or would have been obvious to a skilled artisan in light of the prior art teachings, rending the patent invalid under Sections 102 and/103.

39.    By way of additional example, the claims of the '273 patent fail to adequately describe and/or fail to enable a skilled artisan to construct without undue experimentation at least the navigation device comprising a center button which "enables the entry of at least one voting selection for each of said contests by selecting at least one of said without providing any input on other of said options," rendering the patent invalid under Section 112.

40.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Unisyn requests the declaration of the Court that the '273 patent is invalid.

## JURY DEMAND

Unisyn demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Unisyn respectfully request entry of judgment as follows:

A.    That the Court dismiss with prejudice any and all claims of ES&S's Complaint and order that ES&S takes nothing as a result of the Complaint and that all of ES&S's prayers for relief are denied;

B.    That the Court find and declare, and enter judgment, in favor of Unisyn and against ES&S that Unisyn has not and does not infringe any claim of the '273 patent;

C.     That the Court find and declare, and enter judgment, in favor of Unisyn and against ES&S that each and every claim of the '273 patent is invalid;

D.     That this case be declared "exceptional" under 35 U.S.C. § 285 and that Unisyn be awarded its attorneys' fees, expenses, and costs incurred in this action;

E.     That ES&S be ordered to pay all expenses, costs, and disbursements in this action, including prejudgment interest; and;

F.     That the Court grant to Unisyn such other relief as may be deemed just and appropriate.

Dated:  June 29, 2018                    FISH & RICHARDSON P.C.

                                         By:  /s/ Michael A. Amon
                                              Michael A. Amon, SBN 226221
                                              amon@fr.com
                                              Oliver Richards, SBN 310972
                                              ojr@fr.com
                                              Fish & Richardson P.C.
                                              12390 El Camino Real
                                              San Diego, CA 92130
                                              Phone:  858-678-5070
                                              Fax: 858-678-5099

                                         Attorneys for Defendant
                                         UNISYN VOTING SOLUTIONS, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibits**
**Table of Contents**

| Exhibit No. | Description of Exhibit | Page No(s). |
|---|---|---|
| 1 | Zetter, Kim, "Feds Move to Break Voting Machine Monopoly," Wired Magazine, https://www.wired.com/2010/03/ ess-sued-in-antitrust-cas/ (last visited June 27, 2018). | 1-5 |
| 2 | Gordon, Greg et al., "Voting machine vendor treated election officials to trips to Vegas, elsewhere," McClatchy DC Bureau, https://www.mcclatchydc.com/news/politics-government/election/ article213558729.html# cardLink=row1_card2%23storylink=cpy | 6-16 |
| 3 | U.S. Patent No. 4,641,240 | 17-30 |
| 4 | U.S. Patent No. 7,080,779 | 31-77 |
| 5 | Excerpts from U.S. Patent No. 7,753,273 File History | 78-91 |
| 6 | U.S. Patent No. 6,606,082 | 92-104 |
| 7 | U.S. Patent No. 5,410,326 | 105-149 |
| 8 | Excerpts from Palm Pilot User Guide | 150-152 |

UNISYN'S ANSWER AND COUNTERCLAIMS
CASE NO. 18-CV-0910 CAB (WVG)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 29, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Michael A. Amon*
Michael A. Amon
amon@fr.com